IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| JONATHAN WEBB,<br>　　Plaintiff, | §<br>§<br>§ | |
| v. | §<br>§ | EP-21-CV-00254-DCG-ATB |
| A.W. MCQUADE SR., WARDEN SHEP,<br>and SGT. FRANCO,<br>　　Defendants. | §<br>§<br>§<br>§ | |

## REPORT AND RECOMMENDATION
## OF THE MAGISTRATE JUDGE

On this day, the Court considered the status of the above-styled and numbered cause. On October 5, 2021, Plaintiff Jonathan Webb ("Webb"), proceeding *pro se*, filed his application to proceed *in forma pauperis* ("IFP Application") and his Complaint. (ECF Nos. 1, 1-1).[1] The case was assigned to United States District Judge David Guaderrama and referred to this Court pursuant to the "Standing Referral Order re: Prisoner and Immigration Detainee Civil Rights Cases" dated April 4, 2016.

On October 15, 2021, this Court granted Webb's IFP Application, and his Complaint was thereafter filed. (ECF Nos. 2, 3). In the Order, the Court directed that "[p]rior to ordering service of process on Defendants, the Court will engage in judicial screening of Plaintiff's Complaint pursuant to 28 U.S.C. § 1915A." (ECF No. 2, p. 2). The Court has now screened Webb's Complaint and submits this Report and Recommendation. After due consideration, the Court

---

[1] The Court considers Webb's IFP Application and Complaint to be filed as of October 5, 2021, the date of Webb's signature, rather than the October 13, 2021 docketing date. *See* (ECF No. 1, p. 2); (ECF No. 1-1, p. 7); *Cooper v. Brookshire*, 70 F.3d 377, 378 (5th Cir. 1995) (deeming a *pro se* prisoner's § 1983 complaint to be filed "as of the date that he duly submitted it to prison authorities for forwarding to the clerk of court"); *Ynclan v. Dep't of Air Force*, 943 F.2d 1388, 1392 (5th Cir. 1991) ("[A] delay by the clerk in stamping a complaint 'filed' due to the pendency of a motion to proceed IFP does not jeopardize the timeliness of the plaintiff's commencement of suit."). Accordingly, Webb's claim is not time-barred. *See Morrill v. City of Denton, Tex.*, 693 F. App'x 304, 305–06 (5th Cir. 2017) (per curiam) ("The statute of limitations for a section 1983 claim is determined by the forum state's limitations period for personal injury torts. In Texas that is two years from the date the cause of action accrues." (citations omitted)).

1

**RECOMMENDS** that Webb's Complaint be **DISMISSED WITHOUT PREJUDICE**, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), for failure to state a claim upon which relief may be granted.

## I.     BACKGROUND[2]

On October 5, 2021, Webb filed his Complaint claiming excessive force and cruel and unusual punishment by Defendants Sgt. Franco ("Franco") and A.W. McQuade ("McQuade"), and "retaliation/racial comments" by Defendant Warden Shep ("Shep"). (ECF No. 3, p. 4–5). Webb's claims arose from alleged events occurring on or about October 11, 2019, when Webb was a federal pretrial detainee at the "West Texas Detention Facility" ("Detention Center"),[3] operated by LaSalle Corrections ("LaSalle") in Sierra Blanca, Texas. (*Id.* at p. 3–4); *see also* (*id.* at p. 8) (Webb stating that he was "in federal custody being held by the Marshal[s]" when his "rights were violated," and he was "placed in the facility as a federal detain[ee] at La Salle Corrections/Corp. awaiting to be sent to . . . FCI Phoenix – Medium 37910 N. 45th Ave., Phoenix, AZ 85086").[4]

---

[2] While recounting the factual background, the Court addresses only the facts relevant to the immediate Report and Recommendation.

[3] Pursuant to Federal Rule of Evidence 201, this Court may take judicial notice on its own at any stage of the proceeding of "a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Here, the Court takes judicial notice of West Texas Detention Facility's and West Texas Detention Center's websites, which list the "West Texas Detention Facility" as a U.S. Immigration and Customs Enforcement ("ICE") facility, but lists the "West Texas Detention Center" as a LaSalle Corrections facility, both with the same address. *Compare West Texas Detention Facility*, U.S. Immigration and Customs Enforcement, https://www.ice.gov/detain/detention-facilities/west-texas-detention-facility (last updated Dec. 14, 2020), *with West Texas Detention Center*, LaSalle Corrections, https://lasallecorrections.com/locations-west-texas-detention-center (last visited Dec. 21, 2021); *see Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 457 (5th Cir. 2005) (taking judicial notice of the information published on the website of the National Mediation Board); *M.D. v. Abbot*, 509 F. Supp. 3d 683, 826 n.117 (S.D. Tex. 2020) ("The Court takes judicial notice of the information provided on Prairie Harbor's website."); *Shirley v. FMC Techs., Inc.*, No. A-20-CV-261-RP, 2020 WL 5995695, at *5 n.3 (W.D. Tex. Oct. 9, 2020) ("Pursuant to Fed. R. Evid. 201, the Court takes judicial notice of the CPR Rules on CPR's website . . . ."). Since Webb refers to LaSalle as the operator of the Detention Center, the Court finds that Webb was located at the West Texas Detention Center, not the West Texas Detention Facility. *See* (ECF No. 3, p. 8–9).

[4] The Court takes judicial notice that Plaintiff was sentenced in May 2020, by United States District Judge Frank Montalvo and "committed to the custody of the Federal Bureau of Prisons." *United States v. Webb*, No. 3:19-CR-01295-FM (W.D. Tex. May 1, 2020) (judgment and commitment); *see* Fed. R. Evid. 201(b) (stating that a court may take judicial notice on its own at any stage of the proceeding of "a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot be questioned"); *Ford v. Hous. Indep. Sch. Dist.*, 97 F. Supp. 3d 866, 869 n.1

Webb states that each Defendant is employed at the "West Texas Detention Facility La Salle Corrections/Corp., 401 South Vaquero Ave., Sierra Blanca, Texas 79851." (*Id.* at p. 3).[5]

On or about October 11, 2019, Webb alleges that Franco escorted Webb to the sally port, told Webb to put his hands against the wall, patted him down, handcuffed him, and "then turned [Webb] towards A.W. McQuade." (*Id.* at p. 3–4). Subsequently, Webb alleges that McQuade "ass[a]ulted" Webb when he "[s]prayed [Webb] in the face with mace after [Webb was] already detained, then called [Webb] 'a stupid dumb n****r.'" (*Id.* at p. 3). Thereafter, Webb alleges that Franco "badger[ed]" Webb by "stating what he'll do to [Webb]" while escorting him to the "SHU." (*Id.*). Webb states he was "taken to the [SHU] for 30 days." (*Id.* at p. 4).

Webb claims he was later "targeted" after filing "a formal complaint affidavit," and when he tried to file a separate complaint with the Hudspeth County Sheriff's Office, "Shep intervened and denied [Webb] that right to make such complaint." (*Id.* at p. 5). Webb then alleges that Shep stated that "the term n****r is a freedom of speech term as far as [Shep] was concerned," and "then [Shep] smiled at [Webb]." (*Id.*).

## II.   LEGAL STANDARD

Title 28 U.S.C. § 1915 directs a court to dismiss an *in forma pauperis* complaint at any time if it determines that the complaint is frivolous, "fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Further, the court may *sua sponte* dismiss on these grounds even without serving the defendants. *See Wilson v. Barrientos*, 926 F.2d 480, 482 (5th Cir. 1991) ("Dismissal

---

(S.D. Tex. 2015) ("A court may take judicial notice of an order of another court only for the limited purpose of recognizing the judicial act that the order represents." (citing *Taylor v. Charter Medical Corp.*, 162 F.3d 827, 831 (5th Cir. 1998))). Therefore, the Court finds that Plaintiff was a pretrial detainee on or about October 11, 2019.

[5] Webb does not clarify whether each Defendant is employed by LaSalle or by the government entity contracting with LaSalle, but he does indicate that McQuade was "reprimanded" by LaSalle, which the Court finds indicative of McQuade's employment with LaSalle. *See* (ECF No. 3, p. 4–5).

[under § 1915] is 'often made *sua sponte* prior to the issuance of process, so as to spare prospective defendants the inconvenience and expense of answering such complaints.'" (quoting *Neitzke v. Williams*, 490 U.S. 319, 324 (1989))).[6] To determine whether an *in forma pauperis* complaint fails to state a claim upon which relief may be granted, courts engage in the same analysis as when ruling on a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Hale v. King*, 642 F.3d 492, 497–99 (5th Cir. 2011) (per curiam).

Rule 12(b)(6) provides for dismissal of a complaint when a defendant shows that the plaintiff has "fail[ed] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual matter contained in the complaint must allege actual facts, not legal conclusions masquerading as facts. *Id.* ("Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" (quoting *Twombly*, 550 U.S. at 555)).

To resolve a Rule 12(b)(6) motion, courts must determine "whether in the light most favorable to the plaintiff and with every doubt resolved on his behalf, the complaint states any valid claim for relief." *Gregson v. Zurich Am. Ins. Co.*, 322 F.3d 883, 885 (5th Cir. 2003) (citation omitted). A complaint states a "plausible claim for relief" when the factual allegations contained therein allow the court to infer actual misconduct on the part of the defendant, not a "mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. The complaint "'does not need detailed factual

---

[6] *See also Jones v. Smith*, 234 F. App'x 249, 250 (5th Cir. 2007) (per curiam) (citing *Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam)) (stating that service on defendants is not required before dismissing an action for failure to state a claim).

allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

Furthermore, *pro se* pleadings are reviewed under a less stringent standard than those drafted by attorneys, and such pleadings are entitled to a liberal construction that includes all reasonable inferences that can be drawn from them. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (per curiam). However, even a *pro se* complaint may not merely set forth conclusory allegations. The *pro se* litigant must still set forth facts giving rise to a claim upon which relief may be granted. *Johnson v. Atkins*, 999 F.2d 99, 100 (5th Cir. 1993) (per curiam).

## III. ANALYSIS

### a. *Bivens* and § 1983

The applicable law for Webb's claims depends on whether or not Defendants acted under color of state law at the time of the alleged incidents as prescribed in 42 U.S.C. § 1983.[7] A person who "acts 'under color' of a state 'statute, ordinance, regulation, custom, or usage'" can be held liable under § 1983 for violating a person's rights under the Constitution or federal law. *Richardson v. McKnight*, 521 U.S. 399, 403 (1997) (quoting 42 U.S.C. § 1983); *see also Doe v. United States*, 831 F.3d 309, 314 & n.3 (5th Cir. 2016) (discussing the ways in which courts may deem a person to be a state actor). A person who acts under color of federal law, on the other hand, cannot be held liable under § 1983. *Butts v. Martin*, 877 F.3d 571, 588 (5th Cir. 2017). However, a person acting under color of federal law may be held liable for violating a person's

---

[7] In his Complaint, Webb identifies each Defendant by name, but does not state that he intends to sue any of the Defendants in their official capacities. (ECF No. 3, p. 3). Construing the Complaint liberally, the Court finds each of Webb's allegations to be against the Defendants in their individual capacities. Therefore, the Court will only address Webb's claims as they relate to the Defendants' individual capacities. *Cf. Gibson v. Fed. Bureau of Prisons*, 121 F. App'x 549, 551 (5th Cir. 2004) (per curiam); *Enplanar, Inc. v. Marsh*, 11 F.3d 1284, 1294 n.12 (5th Cir. 1994) ("[A] *Bivens* claim is available only against government officers in their individual capacities.").

constitutional rights in certain circumstances under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

Privately-operated detention center employees can act under the color of either state or federal law, because "maintaining a jail may at times be both a federal and state function." *Doe v. Neveleff*, No. A-11-CV-907-LY, 2013 WL 489442, at *14 (W.D. Tex. Feb. 8, 2013), *report and recommendation adopted*, No. A-11-CV-907-LY, 2013 WL 12098684 (W.D. Tex. Mar. 12, 2013). Courts have found that privately-operated detention centers operate under color of state law when such facilities have a "contractual relationship with the state." *Fabian v. Dunn*, No. SA-08-cv-269-XR, 2009 WL 2461207, at *6 (W.D. Tex. Aug. 6, 2009) (citing *Gallien v. Corr. Corp.*, 91 F.3d 140 (5th Cir. 1996) (per curiam)); *see also Cherry v. Geo Grp., Inc.*, No. DR-19-CV-051-AM-VRG, 2020 WL 9209941, at *5 (W.D. Tex. May 29, 2020) (citing *Rosborough v. Mgmt. & Training Corp.*, 350 F.3d 459, 461 (5th Cir. 2003) (per curiam)), *report and recommendation adopted*, No. DR-19-CV-0051-AM, 2021 WL 1398974 (W.D. Tex. Mar. 18, 2021). Courts have also found that such facilities operate under color of federal law when in contract with the federal government. *Rowland v. Sw. Corr., LLC*, No. 4:20-CV-00847-ALM-CAN, 2021 WL 4206409, at *8–11 (E.D. Tex. Aug. 17, 2021) (collecting cases), *report and recommendation adopted*, No. 4:20-CV-847, 2021 WL 4191433 (E.D. Tex. Sept. 15, 2021). Additionally, courts have held that the custody status of the detainee dictates the status of the detention facility and its employees. *See id.*; *Tavares v. LaSalle Corr. Emerald Corr. Mgmt. W. Tex. Det. Ctr.*, No. EP-17-CV-00289-PRM-RFC, 2018 WL 2452977, at *2 (W.D. Tex. May 31, 2018), *report and recommendation adopted*, No. 3:17-CV-00289-PRM-RFC (W.D. Tex. Aug. 22, 2018) (order adopting report and recommendation).

Webb's Complaint indicates an intent to sue Defendants, as employees of the privately-operated Detention Center, under 42 U.S.C. § 1983. *See* (ECF No. 3, p. 3, 8). However, Webb has not provided the Court with sufficient information to indicate if Defendants were behaving as state actors at the time of the alleged incidents. Further, based on the Complaint, the Court is unable to infer that the Detention Center had a contractual relationship with the state regarding Webb's detention. In fact, Webb clearly states that he was in U.S. Marshal custody and was "awaiting to be sent" to a federal detention facility in Phoenix, Arizona, at the time of the alleged incidents. (*Id.* at p. 8). Based on the information provided in Webb's Complaint, the Court finds that Defendants behaved as federal, not state, actors at the time of the alleged incidents. Accordingly, the Court will analyze Webb's Complaint under the *Bivens* standard instead of § 1983.

In *Bivens*, the Supreme Court authorized a damages remedy, "even absent statutory authorization," where a federal actor violated a person's Fourth Amendment protections against unreasonable searches and seizures. *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854 (2017) (citing *Bivens*, 403 U.S. at 397). The Supreme Court later held that such an implied remedy also exists under the Fifth Amendment Due Process Clause and the Eighth Amendment Cruel and Unusual Punishments Clause. *Id.* at 1854–55 (citing *Davis v. Passman*, 442 U.S. 228, 231, 248–49 (1979) (regarding the Fifth Amendment), and *Carlson v. Green*, 446 U.S. 14, 16–23 (1980) (regarding the Eighth Amendment)).

Outside these cases, the Supreme Court has "consistently refused to extend *Bivens* liability to any new context or new category of defendants." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001). A new context for *Bivens* exists "[i]f the case is different in a meaningful way from previous *Bivens* cases." *Abbasi*, 137 S. Ct. at 1859. Courts shall not extend *Bivens* to a new

7

context if "special factors counsel[] hesitation in the absence of affirmative action by Congress." *Bivens*, 403 U.S. at 396. This "special factors" inquiry "must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed," or whether an "alternative remedial structure" exists. *Abbasi*, 137 S. Ct. at 1857–58. The special factors inquiry is important because "it is a significant step under separation-of-powers principles for a court to determine that it has the authority . . . to create and enforce a cause of action for damages against federal officials in order to remedy a constitutional violation," as opposed to Congress doing so. *Id.* at 1856.

Moreover, private entities acting under color of federal law may not be held liable under *Bivens*. *Malesko*, 534 U.S. at 66. Nor can individual employees of such private entities be held liable under *Bivens* when there is an adequate remedy available under state tort law. *Minneci v. Pollard*, 565 U.S. 118, 130–31 (2012). Regarding the adequacy of an alternative remedy, "the question is whether, in general, state tort law remedies provide roughly similar incentives for potential defendants to comply with the [U.S. Constitution] while also providing roughly similar compensation to victims of violations." *Id.* at 130.

Based on Webb's Complaint, the Court finds that at the time of the alleged incidents, each Defendant acted under color of federal law and as a private employee of LaSalle. *See* (ECF No. 3, p. 3–5, 8). To determine whether each Defendant can be held liable under *Bivens* depends first on whether each of Webb's claims falls within the existing purview of *Bivens*, and if not, whether an extension of *Bivens* is warranted under the special factors analysis. *Abbasi*, 137 S. Ct. at 1860. If *Bivens* applies or an extension is warranted, then the Court must determine whether Webb has an adequate remedy available to him under state tort law. *Minneci*, 565 U.S. at 130–31.

8

b.  **Administrative Grievance Process**

Before filing a *Bivens* claim in court, a claimant must exhaust the available administrative grievance process. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). "[T]o properly exhaust administrative remedies[,] prisoners must 'complete the administrative review process in accordance with the applicable procedural rules'—rules that are defined not by the [Prison Litigation Reform Act], but by the prison grievance process itself." *Jones v. Block*, 549 U.S. 199, 218 (2007) (citation omitted) (quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)).

Webb's Complaint does not explain the Detention Center's grievance process but does explain the steps that Webb took to file grievances. On June 6, 2021, Webb "reached out to medical/staff, health services by email to no avail." (ECF No. 3, p. 19). On July 7, 2021, Webb sent a "Risk Management formal complaint" to LaSalle headquarters, the Detention Center, the "Risk Management Department," and the Governor's office. (*Id.* at p. 18). Also on July 7, 2021, Webb sent a "request for [a] complete copy of [Webb's] central file through F.O.I.A." to LaSalle headquarters, the Detention Center, and the Federal Bureau of Prisons. (*Id.*). On July 16, 2021, Webb sent a "Civil Right Formal Complaint to D.O.J. Civil Right Divis[i]on." (*Id.* at p. 19). On July 19, 2021, Webb "request[ed] through F.O.I.A. the letters [he] sent to [the] Hudspeth County Sheriff [D]epartment regarding [Webb] and [his] complaint on A. Warden Mc[Q]uade from Nov. 2019 to Jan. 2020." (*Id.*). On July 28, 2021, Webb sent mail to the NAACP and ACLU regarding his claims. (*Id.*). Additionally, Webb alleges that Shep interfered with Webb's right to file a complaint with the Hudspeth County Sheriff's Office. (*Id.* at p. 5).

Construing Webb's *pro se* Complaint liberally, the Court finds that Webb has alleged facts that he has exhausted the available grievance procedure or has been prevented from doing so by Shep. *Haines*, 404 U.S. at 520–21.

### c. Excessive Force Claims

Webb alleges that Franco and McQuade used "excessive force" and subjected him to "cruel and unusual punishment" when Franco handcuffed Webb and "turned [Webb] towards A.W. McQuade and [McQuade] then sprayed [Webb] directly in the face with a big can of mace." (ECF No. 3, p. 4). The Court reviews these claims under the Fifth Amendment Due Process Clause rather than the Fourth or Eighth Amendments because at the time of the alleged incidents, Webb was a pretrial detainee and Franco and McQuade were federal actors. *See Abbasi*, 137 S. Ct. at 1864–65; *Ogbolu v. U.S. Immigr. & Customs Enf't*, No. H-06-0115, 2006 WL 3152694, at *5 (S.D. Tex. Nov. 1, 2006) (citing *Valencia v. Wiggins*, 981 F.2d 1440, 1443 (5th Cir. 1993)).

Here, the Court finds that Webb's excessive force claims present a new *Bivens* context as they are meaningfully different from previous *Bivens* cases. Although a *Bivens* remedy has been permitted under the Fifth Amendment, that was done under different facts; specifically, a gender discrimination claim in the context of an employment dispute. *See Davis*, 442 U.S. at 231, 248–49; *Biron v. Upton*, No. 4:15-CV-205-P, 2020 WL 85146, at *6 (N.D. Tex. Jan. 7, 2020) (collecting cases distinguishing new Fifth Amendment contexts for *Bivens*). The facts of the instant case may fit closer to the facts of *Bivens*, regarding officers' use of unreasonable force during an arrest, or *Carlson*, regarding prison officials' failure to provide medical care to a prisoner. *See Bivens*, 403 U.S. at 389; *Abbasi*, 137 S. Ct. at 1864. However, in addition to the different constitutional rights at issue, the legal standards in each case are different. *See Abbasi*, 137 S. Ct. at 1864 (explaining the standard for failure to provide medical treatment as "deliberate indifference to serious medical

needs" (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976))); *Carcamo-Lopez v. Does 1 through 20*, 865 F. Supp. 2d 736, 745–46, 749 (W.D. Tex. 2011) (distinguishing the "reasonableness" standard for excessive force under the Fourth Amendment and the "substantive due process" standard under the Fifth Amendment). These are meaningful distinctions that signal a new *Bivens* context. *Abbasi*, 137 S. Ct. at 1859, 1864; *see also Vicente v. United States*, No. 5:20-CV-81, 2021 WL 4452786, at *2–3 (S.D. Tex. Sept. 29, 2021) (collecting Fifth Circuit cases "confirm[ing] that presumptively extending *Bivens* to cases that can be generally described as 'garden variety excessive force cases' is inapt").

The Court further finds that an extension of *Bivens* to the new context of Webb's excessive force claims is not warranted under the special factors analysis. First, this case presents a clear separation of powers issue because "Congress did not make individual officers statutorily liable for excessive-force or unlawful-detention claims, and the 'silence of Congress is relevant.'" *Byrd v. Lamb*, 990 F.3d 879, 882 (5th Cir. 2021) (quoting *Abbasi*, 137 S. Ct. at 1862), *petition for cert. filed*, 90 U.S.L.W. 3035 (U.S. Aug. 6, 2021) (No. 21-184). Additionally, other remedies are available to address Webb's excessive force claims, such as state tort law, which "provides an adequate remedy for assault and battery." *Palacios v. U.S. Marshal Serv.*, No. 11-CV-00009-RAJ, 2012 WL 12957204, at *4 (W.D. Tex. Feb. 23, 2012). Even if the Court were to extend *Bivens* to Webb's claims, the availability of the state tort remedy would preclude the Court from holding Franco and McQuade liable under *Bivens*. *See Minneci*, 565 U.S. at 130–31. Therefore, the Court finds that Webb does not have a *Bivens* claim against Franco and McQuade for excessive force. Accordingly, the Court recommends dismissing Webb's excessive force claims against Franco and McQuade for failure to state a claim upon which relief may be granted.[8]

---

[8] The Court considers whether it may construe Webb's claims as state tort claims under diversity jurisdiction, since Webb was detained in Arizona when he filed the Complaint. *See* (ECF No. 3, p. 1); 28 U.S.C. § 1332(a). However,

### d. Retaliation Claim

Webb claims he was "targeted after" writing "a formal complaint affidavit with other detain[ees'] signatures on it and notarized." (ECF No. 3, p. 5).[9] Webb claims he then tried to file a separate complaint against McQuade with the Hudspeth County Sheriff's Office, but "Shep intervened and denied [Webb] that right to make such [a] complaint." (*Id.*). The Court here construes Webb's allegations as a retaliation claim that falls under the First Amendment because Webb alleges that Shep retaliated in response to Webb's attempts to submit a complaint. *See Hope v. Harris*, 861 F. App'x 571, 581 (5th Cir. 2021); *Petzold v. Rostollan*, 946 F.3d 242, 252 (5th Cir. 2019).[10]

The Court finds that Webb's First Amendment claim presents a new *Bivens* context as Webb's retaliation claims do not resemble any prior recognized *Bivens* claims,. *Biron*, 2020 WL 85146, at *5 (collecting cases indicating that First Amendment claims are a new context for *Bivens*). Further, the Court finds that the extension of *Bivens* to this new context is not warranted because other courts, including the Supreme Court and the Fifth Circuit, have declined to do so under the special factors analysis. *See id.* at *5–8 (collecting cases). Specifically, courts that have

---

"a change of domicile requires a voluntary act and . . . the domicile of a person cannot be changed by virtue of the legal and physical compulsion of imprisonment." *Bridwell v. Ferrell*, No. 3:07-CV-1575-D, 2008 WL 2388715, at *2 (N.D. Tex. May 9, 2008) (quoting *Jones v. Hadican*, 552 F.2d 249, 250–51 (8th Cir. 1977)). Here, the Court finds there is no diversity of citizenship because Webb must be treated as a Texas resident. *See* (ECF No. 3, p. 1, 9) (listing Texas addresses for each Defendant and a Texas home address for Webb); *Forbes v. Geo Grp., Inc.*, No. 2:19-CV-231, 2020 WL 1279177, at *3 (S.D. Tex. Jan. 24, 2020) (noting that "where a prisoner's citizenship is at issue, federal courts have held that [he] is a citizen of the state of which he was a citizen before he was sent to prison unless he plans to reside elsewhere when he is released, in which event he is a citizen of that state" (alteration in original) (quoting *Davis v. Guthrie*, No. 3:13-cv-1704-O, 2014 WL 46130, at *3 (N.D. Tex. Jan. 6, 2014))), *report and recommendation adopted*, No. 2:19-CV-231, 2020 WL 1321759 (S.D. Tex. Mar. 17, 2020). Accordingly, the Court finds it does not have jurisdiction to hear Webb's state tort claims.

[9] Webb does not clarify whether this "formal complaint affidavit" was submitted as part of a judicial or administrative grievance process.

[10] To the extent that Webb alleges a due process claim regarding Shep's alleged interference with his filing a grievance, the Court finds that Webb fails to state a claim upon which relief may be granted because "prisoners have no due process rights in the inmate grievance process." *Alexander v. Tex. Dep't of Crim. Just.*, 951 F.3d 236, 240 (5th Cir. 2020).

considered "implying a *Bivens* remedy in the First Amendment context have declined to do so because such action would 'violate Congress's intent, create increased costs on the Bureau of Prisons, and have a harmful effect on institutional security and federal officers' discharge of their duties.'" *Begay v. Leap*, No. 3:17-CV-2639-N-BT, 2019 WL 1318410, at *4 (N.D. Tex. Feb. 26, 2019) (quoting *Butler v. Porter*, No. 2:17-cv-0230, 2018 WL 6920355, at *3 (W.D. La. Sept. 10, 2018), *report and recommendation adopted*, No. 2:17-cv-0230, 2019 WL 81677 (W.D. La. Jan. 2, 2019), *aff'd*, 999 F.3d 287 (5th Cir. 2021), *petition for cert. filed*, 90 U.S.L.W. 3135 (U.S. Nov. 1, 2021) (21-655)); *see also Biron*, 2020 WL 85146, at *8.  Therefore, the Court finds that Webb does not have a *Bivens* claim against Shep for retaliation.  Accordingly, the Court recommends dismissing Webb's retaliation claim against Shep for failure to state a claim upon which relief may be granted.

    **e.**    **Racial Discrimination Claims**

Webb alleges that McQuade called Webb a "stupid dumb n****r" after spraying Webb with mace. (ECF No. 3, p. 5).  Webb also alleges that Shep said "the term n****r is a freedom of speech term as far as [Shep] was concerned," and "then [Shep] smiled at [Webb]," after Shep denied Webb the opportunity to file a complaint with [the] Hudspeth County Sheriff's Office. (*Id.*).  Webb states he was "mentally distraught [by] this." (*Id.*).

Regarding whether Webb has pled a constitutional violation under *Bivens*, the Court construes Webb's allegations as racial discrimination claims falling under the Fifth Amendment Due Process Clause; specifically its "prohibition against denying to any person the equal protection of the laws." *Butts*, 877 F.3d at 590 (quoting *United States v. Windsor*, 570 U.S. 744, 774 (2013)); *see Belfrey-Farley v. Palmer*, No. 3:19-cv-1305-S-BT, 2021 WL 2814885, at *6 (N.D. Tex. May

13

7, 2021), *report and recommendation adopted*, No. 3:19-CV-1305-S-BT, 2021 WL 2808826 (N.D. Tex. July 6, 2021).

Fifth Circuit case law regarding racial discrimination claims under *Bivens* is not entirely clear. As discussed above, although a *Bivens* remedy has been permitted under the Fifth Amendment, it was permitted under different facts; specifically, a gender discrimination claim in the context of an employment dispute. *See Davis*, 442 U.S. at 231, 248–49; *Biron*, 2020 WL 85146, at *6. Some courts have determined that facts alleging racial discrimination are meaningfully different from facts alleging gender discrimination, and therefore, constitute a new *Bivens* context. *See Belfrey-Farley*, 2021 WL 2814885, at *6 (citing *Davis*, 420 U.S. at 230, 248-249). But some courts, including the Fifth Circuit, have indicated the possibility of a *Bivens* remedy for a racial discrimination claim, albeit under facts that differ from the instant case. *See Moore v. U.S. Dep't of Agric., ex rel. Farmers Home Admin.*, 993 F.2d 1222, 1222–23 (5th Cir. 1993) [*Moore I*] (citing *Davis*, 442 U.S. at 248–49) (stating, in the context of a "denied . . . opportunity to participate in a sale of inventory farmland," that "[b]ecause of the overt racial discrimination, the [plaintiffs'] allegations pose more than a possibility of recovery under a *Bivens*-type action founded in the equal protection component of the Fifth Amendment"); *Williams v. Meese*, 926 F.2d 994, 996, 998 (10th Cir. 1991) (holding that allegations of racial discrimination in an employment context were sufficient for a *Bivens* claim). However, after the Fifth Circuit remanded *Moore I* on the issue of standing, the Fifth Circuit's stance on *Bivens* racial discrimination claims remains unclear. *See Moore v. U.S. Dep't of Agric. ex rel. Farmers Home Admin.*, 55 F.3d 991, 992, 995 (5th Cir. 1995) [*Moore II*] (acknowledging the suggestion in *Moore I* of a possible *Bivens* claim for racial discrimination, but ultimately holding that such claim was

precluded on other grounds by *FDIC v. Meyer*, 510 U.S. 471 (1994), without clarifying the status of Fifth Amendment racial discrimination claims under *Bivens*).

More recently, the Supreme Court clarified the meaningful differences that distinguish a new *Bivens* context. *See Ziglar v. Abbasi*, 137 S. Ct. 1843, 1860 (2017) ("A case might differ in a meaningful way because of the rank of the officers involved; . . . the generality or specificity of the official action; . . . the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider."). Through this reasoning, the Supreme Court held that a claim of detention "in harsh conditions because of [the detainees'] actual or apparent race, religion, or national origin, in violation of the equal protection component of the Fifth Amendment," presented a new *Bivens* context. *Id.* at 1853, 1860. Adopting the Supreme Court's reasoning in *Abbasi*, the Court finds that Webb's racial discrimination claims are meaningfully different from established *Bivens* claims, and therefore, present a new *Bivens* context.

Further, the Court finds that special factors counsel against extending *Bivens* to Webb's discrimination claims. In *Abbasi*, the Supreme Court held, in reference to the Fifth Amendment equal protection claim amongst other claims, that "the special factors . . . show that whether a damages action should be allowed is a decision for the Congress to make, not the courts." *Id.* at 1860. Other courts have similarly declined to extend *Bivens* to racial discrimination claims. *See, e.g.*, *Belfrey-Farley v. Palmer*, No. 3:19-cv-1305-S-BT, 2021 WL 2814885, at *6–7 (N.D. Tex. May 7, 2021), *report and recommendation adopted*, No. 3:19-CV-1305-S-BT, 2021 WL 2808826 (N.D. Tex. July 6, 2021). In the instant case, the Court finds similar separation of powers issues. Therefore, the Court finds that Webb does not have a valid *Bivens* claim against McQuade and

15

Shep for discrimination. Accordingly, the Court recommends dismissing Webb's racial discrimination claims against McQuade and Shep for failure to state a claim upon which relief may be granted.

## IV.     CONCLUSION

For the foregoing reasons, the Court finds that Webb's Complaint fails to state a claim upon which relief may be granted. Accordingly, the Court **RECOMMENDS** that:

- Webb's claims against Franco and McQuade for excessive force be **DISMISSED WITHOUT PREJUDICE**;

- Webb's claims against Shep for retaliation be **DISMISSED WITHOUT PREJUDICE**; and

- Webb's claims against McQuade and Shep for racial discrimination be **DISMISSED WITHOUT PREJUDICE**.

**SIGNED** and **ENTERED** this 14th day of January, 2022.

_____
**ANNE T. BERTON
UNITED STATES MAGISTRATE JUDGE**

**NOTICE**

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THE FOREGOING REPORT, WITHIN FOURTEEN DAYS OF SERVICE OF SAME, MAY BAR DE NOVO DETERMINATION BY THE DISTRICT JUDGE OF AN ISSUE COVERED HEREIN AND SHALL BAR APPELLATE REVIEW, EXCEPT UPON GROUNDS OF PLAIN ERROR, OF ANY UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS AS MAY BE ACCEPTED OR ADOPTED BY THE DISTRICT COURT.**